IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GERALD KANE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 24-638-JLH |
| | ) |
| NEW CASTLE COUNTY POLICE | ) |
| DEPARTMENT, et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Gerald Kane ("Plaintiff") filed this civil action against the New Castle County Police Department ("NCCPD"), Officer M. Kempel ("Kempel") of the NCCPD, and seven unknown officers of the NCCPD. (D.I. 2) Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 4) The Court proceeds to screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons set forth below, the Court recommends that the Complaint be dismissed in the manner set out below.

**I.     BACKGROUND**

In his Complaint, Plaintiff, a Chester, Pennsylvania resident, alleges claims arising out of an incident that occurred on the evening of May 9, 2024 in New Castle County, Delaware. (D.I. 2 at 4, 8) Plaintiff asserts that while driving his vehicle that night, he was pulled over and detained by Kempel, who had no reasonable suspicion to justify his stop of Plaintiff's car. (*Id*. at 9) When Plaintiff asked Kempel why he had been pulled over, Kempel told Plaintiff that Plaintiff's "tags didn't match up" with his car. (*Id*.) Plaintiff responded by telling Kempel that "running the tags" without reasonable suspicion was unlawful; Kempel allegedly retorted that he did not need reasonable suspicion to run a driver's tags. (*Id*.) After Plaintiff declined Kempel's

request that Plaintiff identify himself, Kempel ordered Plaintiff out of his vehicle, placed Plaintiff in handcuffs, detained Plaintiff for approximately 40-50 minutes, and "unlawfully searched" Plaintiff. (*Id*. at 9-10)

The seven unknown officers eventually arrived on the scene, including a supervisor; they and Kempel all "unlawfully search[ed]" Plaintiff's car. (*Id*. at 10) Plaintiff repeatedly informed these officers that he had been subject to an unlawful stop; the officers responded that they could run a motorist's "tags whenever they chose to[.]" (*Id*.) Thereafter, Plaintiff was driven while handcuffed to a friend's house and released. (*Id*. at 10-11)

Plaintiff brings claims against Defendants under the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983 ("Section 1983"). (*Id*. at 3) He claims injury due to the alleged unlawful detention, and physical injuries due to the tightness of the handcuffs. (*Id.* at 7)

## II.     STANDARD OF REVIEW

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. §§ 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (internal quotation marks and citations omitted), *abrogated on other grounds*, *Talley v. Wetzel*, 15 F.4th 275 (3d Cir. 2021); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and view them in the light most favorable to a *pro se* plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must

2

be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). Rather, a claim is deemed frivolous only where it relies on an "indisputably meritless legal theory or a clearly baseless or fantastic or delusional factual scenario." *Id.* (internal quotation marks and citations omitted).

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, however, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" entitlement to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.    DISCUSSION

The Court first addresses Plaintiff's claims against Kempel and the seven other unnamed officers. Thereafter, it will address Plaintiff's claims against the NCCPD.

#### A.    Kempel and the Other Officers

Plaintiff's first claim against Kempel appears to be that Kempel unlawfully stopped him without having reasonable suspicion to do so, in violation of the Fourth Amendment.

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government. U.S. Const. amend. IV; *Maryland v. King*, 569 U.S. 435, 447 (2013). Here, however, Plaintiff's factual allegations do not plausibly indicate that an unlawful traffic stop occurred in violation of the Fourth Amendment. Traffic stops are "seizures" within the meaning of the Fourth Amendment, although "the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *see also United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006). A "police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)).

In the Complaint, Plaintiff pleads that Kempel told him that the reason Kempel pulled Plaintiff's car over was that Plaintiff's "tags didn't match up" to Plaintiff's vehicle. (D.I. 2 at 9) Under the facts as pled, the fact that Plaintiff was driving a vehicle that did not have a proper

4

license plate (i.e., one that did not match with the car it was attached to) amounts to reasonable suspicion for a stop. *See Aikens v. New Castle Cnty. Police Dep't*, Civil Action No. 21-350-RGA, 2021 WL 5051145, at *4 (D. Del. Nov. 1, 2021) (citing Del. C. tit. 21, § 2101(a)); *see also Bey ex rel. Ruiz v. McKinney*, Civil Action No. 15-8089 (JBS/KMW), 2017 WL 1024275, at *3 (D.N.J. Mar. 15, 2017). To the extent that Plaintiff complains that Kempel violated his rights by earlier "running [Plaintiff's] tags" without reasonable suspicion to do so, (D.I. 2 at 9), the law does not prohibit that act, *see, e.g., United States v. Sparks*, 37 F. App'x 826, 829 (8th Cir. 2002); *Wilson v. Carnochan,* Case No. 2:23-cv-03496-VBF-SHK, 2024 WL 4744378, at *16 (C.D. Cal. July 29, 2024) (citing cases), *report and recommendation adopted*, 2024 WL 4882636 (C.D. Cal. Nov. 21, 2024); *Porter v. City of Los Angeles*, Case No. CV 15-7657 PSG (KSx), 2016 WL 11129524, at *3-4 (C.D. Cal. Sept. 15, 2016) (citing cases). For these reasons, the Court recommends that this claim be dismissed with prejudice.

Plaintiff next alleges that Kempel unlawfully searched him, and that Kempel and the seven other unnamed officers unlawfully searched his vehicle. (D.I. 2 at 9-10) In the course of a lawful traffic stop, a police officer may frisk the driver and conduct a search of the passenger compartment of his car if there is reasonable suspicion that the driver might be presently armed and dangerous. *Bonner*, 363 F.3d at 216. The Complaint contains few details about the circumstances giving rise to the search of Plaintiff and his vehicle. In light of the fact that the pleading indicates that Plaintiff was driving a car with a fictitious license plate, and that Plaintiff refused to identify himself to Kempel, (D.I. 2 at 9-10), and in light of the absence of other facts that might indicate plausibility here, the Court recommends that these claims be dismissed, but that Plaintiff be given leave to amend them. *Aikens*, 2021 WL 5051145, at *5.

Lastly, Plaintiff alleges that Kempel and the other officers violated his Fourth Amendment rights when Plaintiff was "detained for approximately 40-50 minutes" during and after the stop. (D.I. 2 at 9-11) To determine whether an investigatory stop was executed within the bounds of the Fourth Amendment, the Supreme Court of the United States has prescribed a dual inquiry into "whether the officer's action was justified at its inception," in that it was supported by reasonable suspicion (as was the case here), and whether the manner in which the stop was conducted was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968); *see United States v. Johnson*, 592 F.3d 442, 452 (3d Cir. 2010). A lawful stop and frisk under *Terry* is a seizure that may elevate into a *de facto* arrest, depending on "the reasonableness of the intrusion[.]" *United States v. Edwards*, 53 F.3d 616, 619-20 (3d Cir. 1995). Only if the *Terry* stop escalates into an arrest must the seizure be justified under a higher probable cause standard. *United States v. Sharpe*, 470 U.S. 675, 684 (1985); *Johnson*, 592 F.3d at 447-48. "[W]hen police officers make an investigative stop, they may take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *Edwards*, 53 F.3d at 619 (internal quotation marks and citations omitted).

Here again, the Complaint pleads few facts about the circumstances surrounding the detention, such as what was occurring during the 40-50-minute period of time at issue, or whether any delaying tactics were used. In the absence of such facts, the Court concludes that the Complaint does not plausibly suggest that the stop was not reasonably related in scope to the circumstances justifying the stop. *See Greathouse v. City of Fresno*, Case No. 1:24-cv-00715-JLT-BAM, 2024 WL 4381991, at *3 (E.D. Cal. Oct. 3, 2024) (finding that the plaintiff failed to state a claim for unlawful seizure where "[t]he complaint is silent as to the events or

circumstances preceding Plaintiff's alleged seizure or detention by officers" as well as the "scope of any seizure"); *cf. Cosme v. LASD*, No. CV 09-2363-CAS (DTB), 2009 WL 3517553, at *6 (C.D. Cal. Oct. 23, 2009) (explaining that the plaintiff's allegations may be sufficient to allege that officers detained plaintiff longer than necessary following traffic stop, where he alleged facts relating to the detainment, including that "the deputies detained him in the back of the patrol car for a period of perhaps an hour while they searched his vehicle, questioned him about the ownership of the vehicle, and made and received calls on his cell phone"). The Court recommends that these claims be dismissed but that Plaintiff be permitted leave to amend.

B.   NCCPD

The Court lastly addresses Plaintiff's claim against the NCCPD. A municipality may only be held liable under Section 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotation marks and citation omitted). Although a government policy is established by a "decisionmaker possess[ing] final authority[,]" a custom arises from a course of conduct "so permanent and well settled as to virtually constitute law." *Id.* (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must: (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).

Here, Plaintiff's claim against the NCCPD was pleaded in a conclusory manner without any supporting facts. He has not, for example, pleaded that NCCPD was the "moving force"

behind any alleged constitutional violation. Absent any allegation that a custom or policy established by the NCCPD directly caused harm to Plaintiff, his Section 1983 claim against that entity cannot stand; any such claim appears frivolous, and so the Court recommends that this claim be dismissed with prejudice. *See, e.g., Woody v. New Castle Police Dep't,* C.A. No. 21-1812 (MN), 2022 WL 1202592, at *3 (D. Del. Apr. 22, 2022); *Tait v. New Castle Cnty. Police Dep't*, C.A. No. 19-348 (MN), 2019 WL 2550798, at *3 (D. Del. June 20, 2019).

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Complaint be dismissed, and that Plaintiff be given leave to amend as to certain claims referenced above.[1]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. Parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

Parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: April 11, 2025

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[1] Plaintiff has also filed a motion seeking to amend his Complaint ("motion to amend"). (D.I. 5) In light of the above recommendations, the Court recommends that this motion to amend be GRANTED-IN-PART and DENIED-IN-PART in the manner set out above.